Nos. 12-13500-EE & 12-14731-EE

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 12-13500-EE

PAULINE WALKER, ET AL.,
*Plaintiff-Appellee,*

v.

R.J. REYNOLDS TOBACCO CO.,
*Defendant-Appellant.*

No. 12-14731-EE

GEORGE DUKE III,
*Plaintiff-Appellee,*

v.

R.J. REYNOLDS TOBACCO CO.,
*Defendant-Appellant.*

Appeals from the United States District Court
for the Middle District of Florida

**CONSOLIDATED REPLY BRIEF OF APPELLANT
R.J. REYNOLDS TOBACCO COMPANY**

Paul D. Clement
BANCROFT PLLC
1919 M Street, N.W.
Suite 470
Washington, DC  20036
(202) 234-0090

Stephanie E. Parker
*Counsel of Record*
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA  30309
(404) 581-8552

*Attorneys for Appellant R.J. Reynolds Tobacco Company*
(additional counsel listed on signature page)

**TABLE OF CONTENTS**

<b>Page</b>

I.   THE *ENGLE* JURY DID NOT NECESSARILY DECIDE THAT ALL REYNOLDS CIGARETTES WERE DEFECTIVE AND NEGLIGENTLY DESIGNED OR MARKETED.................................3

    A.   Plaintiffs' Position Conflicts With Prior Decisions ...........................4

    B.   Plaintiffs' Position Conflicts With The *Engle* Record.......................5

    C.   The "Thing Adjudicated" May Have Nothing To Do With Plaintiffs' Individual Claims .............................................10

II.   THE FLORIDA SUPREME COURT CANNOT AVOID DUE PROCESS BY LABELING ITS ANALYSIS "CLAIM" PRECLUSION..........11

    A.   The Court's Application Of "Claim" Preclusion Seeks To Evade Constitutional Limits With Mere Labels ...............................12

    B.   The Court's Application Of "Claim" Preclusion Is Unprecedented ...................................................................14

    C.   The Court's Application Of "Claim" Preclusion Is Fundamentally Unfair ..................................................22

    D.   The Court's Application of "Claim" Preclusion Diminishes Reynolds's Substantive Rights.......................................28

III.   THE REMAINING ARGUMENTS ASSERTED BY PLAINTIFFS AND BY THE FLORIDA SUPREME COURT LACK MERIT ...............32

    A.   "Opportunity To Be Heard" In *Engle* ...............................................32

    B.   Opportunity To Litigate Non-Precluded Elements ...........................34

    C.   *Fayerweather* And Tradition...............................................34

    D.   "Collateral Attack"...............................................36

    E.   Waiver ...............................................36

    F.   Phase II-A...............................................39

CONCLUSION ...............................................40

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Acadia Partners, L.P. v. Tompkins*,
    673 So. 2d 487 (Fla. 5th DCA 1996)..................................................37

*ACandS, Inc. v. Godwin*,
    340 Md. 334 (1995) .........................................................................21

*Agostini v. Felton*,
    521 U.S. 203 (1997).........................................................................36

*Air-Way Elec. Appliance Corp. v. Day*,
    266 U.S. 71 (1924)......................................................................13, 14

*Allen v. Int'l Truck & Engine Corp.*,
    358 F.3d 469 (7th Cir. 2004) ...........................................................20

*Allstate Ins. Co. v. A.D.H., Inc.*,
    397 So. 2d 928 (Fla. 3d DCA 1981).................................................37

*Arlin-Golf, LLC v. Vill. of Arlington Heights*,
    631 F.3d 818 (7th Cir. 2011) ...........................................................18

*Ashe v. Swenson*,
    397 U.S. 436 (1970).........................................................................10

*Baker v. GMC*,
    522 U.S. 222 (1998).........................................................................15

*Baltimore Contractors, Inc. v. Gen. Concrete Constr. Corp.*,
    No. 80-551, 1982 U.S. Dist. LEXIS 10273 (E.D. Pa. Feb. 10, 1982)...............18

*Bank of N. Am. v. Wheeler*,
    28 Conn. 433 (1859) ........................................................................17

*Bd. of Cnty. Comm'rs v. Umbehr*,
    518 U.S. 668 (1996).........................................................................12

# TABLE OF AUTHORITIES
Cont'd

**Page**

*Beegan v. Schmidt,*
    451 A.2d 642 (Me. 1982)...................................................................16

*Bell v. Burson,*
    402 U.S. 535 (1971)...............................................................13, 25

*Boynton Landscape v. Dickinson,*
    752 So. 2d 1236 (Fla. 1st DCA 2000) .............................................25

*Brown v. One Beacon Ins. Co.,*
    317 F. App'x 915 (11th Cir. 2009) ...................................................18

*Brown v. R.J. Reynolds Tobacco Co.,*
    576 F. Supp. 2d 1328 (M.D. Fla. 2008)............................................5

* *Brown v. R.J. Reynolds Tobacco Co.,*
    611 F.3d 1324 (11th Cir. 2010) ...............................................*passim*

*Busick v. Workmen's Comp. Appeals Bd.,*
    500 P.2d 1386 (Cal. 1972)...............................................................16

*Carnegie v. Household Int'l, Inc.,*
    376 F.3d 656 (7th Cir. 2004) ..........................................................20

*Chew v. Gates,*
    27 F.3d 1432 (9th Cir. 1994) ..........................................................28

*Comm'r v. Sunnen,*
    333 U.S. 591 (1948).......................................................................15

*Cooper v. Fed. Reserve Bank of Richmond,*
    467 U.S. 867 (1984).......................................................................21

*Cromwell v. Cnty. of Sacramento,*
    94 U.S. 351 (1877).........................................................................17

*Daenzer v. Wayland Ford, Inc.,*
    193 F. Supp. 2d 1030 (W.D. Mich. 2002) ......................................20

*DuChateau v. Camp, Dresser & McKee, Inc.,*
    __ F.3d __, 2013 U.S. App. LEXIS 7195 (11th Cir. Apr. 9, 2013) ...................21

## TABLE OF AUTHORITIES
Cont'd

**Page**

*Eastman Kodak Co. v. Atl. Retail, Inc.*,
  456 F.3d 1277 (11th Cir. 2006) ........................................................26

*Engle v. Liggett Grp., Inc.*,
  945 So. 2d 1246 (Fla. 2006) ......................................................13, 16

*Engle v. R.J. Reynolds Tobacco Co.*,
  No. 94-08273 CA-22, 2000 WL 33534572
  (Fla. Cir. Ct. Nov. 6, 2000) .............................................................9

\* *Fayerweather v. Ritch*,
  195 U.S. 276 (1904).................................................................*passim*

*Federated Dep't Stores v. Moitie*,
  452 U.S. 394 (1981)..........................................................................26

*Fla. E. Coast Ry. Co. v. Gonsiorowski*,
  418 So. 2d 382 (Fla. 4th DCA 1982)...............................................38

*Gibson v. Ada Cnty.*,
  266 F. App'x 686 (9th Cir. 2008) ....................................................18

*Hammond Packing Co. v. Arkansas*,
  212 U.S. 322 (1909)..........................................................................25

*Hauser v. Mealey*,
  263 N.W.2d 803 (Minn. 1978) ........................................................16

*Hernandez v. Motor Vessel Skyward*,
  61 F.R.D. 558 (S.D. Fla. 1973)........................................................20

*Hintz v. JPMorgan Chase Bank, N.A.*,
  686 F.3d 505 (8th Cir. 2012) ...........................................................17

\*  *Honda Motor Co. v. Oberg*,
  512 U.S. 415 (1994)....................................................................14, 35

*In re Bridgestone/Firestone, Inc., Tire Prods. Liab. Litig.*,
  288 F.3d 1012 (7th Cir. 2002) .........................................................31

<u>TABLE OF AUTHORITIES</u>

Cont'd

**Page**

*In re Copley Pharm., Inc.*,
    158 F.R.D. 485 (D. Wyo. 1994) ....................................................20

*In re Fibreboard Corp.*,
    893 F.2d 706 (5th Cir. 1990) .......................................................29

*In re Rhone-Poulenc Rorer Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ......................................................20

*Kroier v. Kroier*,
    95 Fla. 865 (1928) ......................................................................22

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982).....................................................24, 25, 33

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)....................................................................22

*McCormack v. Abbott Labs.*,
    617 F. Supp. 1521 (D. Mass. 1985)............................................20

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) .......................................................29

*McLymont v. A Temporary Solution*,
    738 So. 2d 447 (Fla. 1st DCA 1999) ..........................................26

*Meyers v. City of Jacksonville*,
    754 So. 2d 198 (Fla. 1st DCA 2000) .....................................31, 32

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) .................................................19, 20

*O'Connor v. Pierson*,
    568 F.3d 64 (2d Cir. 2009) .........................................................18

*Oklahoma City v. McMaster*,
    196 U.S. 529 (1905)....................................................................15

* *Philip Morris USA, Inc. v. Douglas*,
    No. SC12-617, 2013 WL 978259 (Fla. Mar. 14, 2013) ............*passim*

# TABLE OF AUTHORITIES
## Cont'd

**Page**

*Philip Morris USA Inc. v. Scott*,
   131 S. Ct. 1 (2010)................................................................29

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007)........................................................24, 34

*R.J. Reynolds Tobacco Co. v. Brown*,
   70 So. 3d 707 (Fla. 4th DCA 2011)......................................16

*R.J. Reynolds Tobacco Co. v. Martin*,
   53 So. 3d 1060 (Fla. 1st DCA 2010) ...................................17

*\* Richards v. Jefferson Cnty., Ala.*,
   517 U.S. 793 (1996)..............................................................11

*Riley v. Maloney*,
   499 N.W.2d 18 (Iowa 1993) .................................................16

*Rivet v. Regions Bank*,
   522 U.S. 470 (1998)..............................................................17

*Russell v. Place*,
   94 U.S. 606 (1877)..................................................................6

*Sacred Heart Health Sys. v. Humana Military Healthcare Servs., Inc.*,
   601 F.3d 1159 (11th Cir. 2010) ...............................29, 30, 32

*Schuler v. Israel*,
   120 U.S. 506 (1887)..............................................................15

*Seaboard Coast Line R.R. Co. v. Indus. Contracting Co.*,
   260 So. 2d 860 (Fla. 4th DCA 1972).................................37, 38

*SEC v. Elliott*,
   953 F.2d 1560 (11th Cir. 1992) ...........................................13

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
   531 U.S. 497 (2001)..............................................................31

*Short v. Dep't of Emp't Servs.*,
   723 A.2d 845 (D.C. 1998) ....................................................16

# TABLE OF AUTHORITIES
Cont'd

**Page**

*Sosa v. Safeway Premium Fin. Co.*,
    73 So. 3d 91 (Fla. 2011) ......................................................................6

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)...........................................................................11

*United States v. Cal. & Or. Land Co.*,
    192 U.S. 355 (1904)...........................................................................25

*Wade v. Clower*,
    94 Fla. 817 (1927) ............................................................................15

\* *Waggoner v. R.J. Reynolds Tobacco Co.*,
    835 F. Supp. 2d 1244 (M.D. Fla. 2011).........................1, 2, 5, 14, 34

*West v. Caterpillar Tractor Co.*,
    336 So. 2d 80 (Fla. 1976) ............................................................31, 32

*Whitman v. Castlewood Int'l Corp.*,
    383 So. 2d 618 (Fla. 1980) ...............................................................38

## OTHER AUTHORITIES

1 Simon Greenleaf,
    *Treatise on the Law of Evidence* (3d ed. 1846) ..........................15, 26

7AA Charles A. Wright *et al.*, *Fed. Practice & Procedure* (3d ed. 2005)
    § 1789.................................................................................................31

18 Charles A. Wright *et al.*, *Fed. Practice and Procedure* (2d ed. 2002)
    § 4412.................................................................................................26
    § 4418.................................................................................................21
    § 4420...........................................................................................28, 38

Abraham Clark Freeman,
    *A Treatise on the Law of Judgments* (1873) .....................................17

Eugene Gressman *et al.*,
    *Supreme Court Practice* (9th ed. 2007).............................................37

# TABLE OF AUTHORITIES
Cont'd

**Page**

Restatement (First) of Judgments (1942)
  § 45......................................................................................21

Restatement (Second) of Judgments (1982)
  § 17......................................................................................25
  § 18......................................................................................17
  § 19......................................................................................17
  § 24......................................................................................25

In our opening briefs, we showed that due process requires that a prior factfinder actually decide an issue before litigation of that issue may be precluded in a subsequent case. This basic constitutional rule follows from the Supreme Court's decision in *Fayerweather v. Ritch*, 195 U.S. 276 (1904), from an unbroken and centuries-long common-law tradition, and from core requirements of fairness. *See* Appellant's Br. in *Duke* ("*Duke* Br.") 23-35. We further showed that this requirement of an actual decision was not satisfied in these cases, because the Phase I conduct findings in *Engle* could have rested on brand-specific, type-specific, or time-specific allegations about cigarettes that have no relevance to the smoking histories of Albert Walker or Sarah Duke. *Id.* at 35-38. Finally, we showed that the district court in *Waggoner* had no sound reason for its remarkable conclusion that the universal requirement of an actual decision lacks any constitutional basis. *Id.* at 39-45.

After our opening briefs were filed, the Florida Supreme Court addressed the permissible use of the Phase I findings in *Philip Morris USA, Inc. v. Douglas*, No. SC12-617, 2013 WL 978259 (Fla. Mar. 14, 2013). That court did not contend that the findings, either on their face or considered in light of the *Engle* record, establish that *all* cigarettes are defective or that the sale of *all* cigarettes is negligent. To the contrary, that court acknowledged that the "proof submitted" in *Engle* included both evidence of "brand-specific defects" and evidence that all cigarettes are defec-

tive. *Id.* at *2. Accordingly, the court recognized that the requirement of an actual decision, if applied, "would effectively make the Phase I findings regarding the *Engle* defendants' conduct useless in individual actions." *Id.* at *12. Nonetheless, the court concluded that the Phase I findings permissibly establish the defect and negligence *elements* of all *Engle* progeny claims, on the theory that the governing doctrine could be labeled "claim" preclusion, which extends not only to matters actually decided in a prior action, but also "'to every other matter which *might* with propriety have been litigated and determined.'" *Id.* (citation omitted; emphasis added).

Plaintiffs' brief is striking in its failure to defend the core reasoning of either *Waggoner* or *Douglas*, and in affirmatively contradicting key premises of both opinions. Unlike *Waggoner*, Plaintiffs make only a perfunctory argument that the requirement of an actual decision is not constitutionally compelled. Instead, they primarily contend, contrary to both *Waggoner* and *Douglas*, that the requirement is *satisfied* because, they say, the *Engle* jury *actually decided* that *all* cigarettes are defective and negligently designed or marketed. Plaintiffs' Br. ("PB") 2-10, 27-38. Unlike *Douglas*, Plaintiffs make only a perfunctory argument that a court may eliminate the constitutional question presented in these appeals by framing the question presented as one of "claim" preclusion. Instead, contrary to *Douglas*,

they ultimately concede that nothing turns on the state-law "label" because "due process inheres in function not form." PB 39; *id.* at 34-36, 39-41.

Neither Plaintiffs' theory, nor that of *Douglas*, has merit. First, contrary to Plaintiffs, the Phase I findings cannot be shown to apply to *all* cigarettes; therefore, those findings did not ascertainably decide the specific issues raised by the individual smoking histories of Albert Walker and Sarah Duke. Second, contrary to *Douglas*, the constitutional violation of deeming elements of claims established, without any assurance that a prior jury actually decided the facts necessary to establish those elements, cannot be cured by framing the question as one of "claim" rather than issue preclusion. Finally, the various additional arguments advanced by Plaintiffs or *Douglas* lack merit.

## I.    THE *ENGLE* JURY DID NOT NECESSARILY DECIDE THAT ALL REYNOLDS CIGARETTES WERE DEFECTIVE AND NEGLIGENTLY DESIGNED OR MARKETED

The *Engle* class presented numerous alternative theories of defect, negligence, and concealment. For example, in addition to raising general allegations about all cigarettes, the class raised more specific allegations about *unfiltered* cigarettes, *filtered* cigarettes, *light* cigarettes, cigarette brands with *specific additives*, cigarette brands with *artificially manipulated* levels of nicotine, cigarette brands marketed only *during certain times*, and cigarette brands marketed only to *certain consumers*. *Duke* Br. 4-6; Appellant's Br. in *Walker* ("*Walker* Br.") 4-6. Despite

all of this, Plaintiffs' principal contention is that the Phase I findings ascertainably apply to all cigarettes and class members. PB 2-10, 27-38. Plaintiffs are mistaken.

### A.    Plaintiffs' Position Conflicts With Prior Decisions

Plaintiffs' position is inconsistent with the conclusions of every court that has examined the *Engle* record. To begin, it is difficult to reconcile with *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324 (11th Cir. 2010) ("*Bernice Brown*"), where this Court virtually concluded that the *Engle* defect finding does not encompass all cigarettes. Despite formally reserving that question for resolution on remand, the Court expressed skepticism: "One problem with that argument is that the plaintiffs have pointed to nothing in the record, and there is certainly nothing in the jury findings themselves, to support their factual assertion" that the defect finding "must mean that all cigarettes the defendants sold were defective." *Id.* at 1335. And in a concurrence adopted by the majority (*id.* at 1336 n.11), Judge Anderson pointedly noted that "[t]he generality of the Phase I findings present plaintiffs with a considerable task" in seeking to establish that they encompass the brands and types of cigarettes smoked by any particular plaintiff (*id.* at 1336 n.1).

The three courts that have analyzed the due-process question are even more firm. Despite reaching varied legal conclusions, these courts unanimously support Reynolds on the question of what the *Engle* jury necessarily decided. In *Douglas*, the Florida Supreme Court acknowledged that the *Engle* class pursued *not just* ge-

4

neric allegations that cigarettes "were defective because they are addictive and cause disease," *but also* allegations of "brand-specific defects" not applicable to all cigarettes. 2013 WL 978259, at *2. That court further agreed that, because it is impossible to determine what specific allegations the *Engle* jury accepted, the findings would be "useless in individual actions" under traditional issue-preclusion standards. *Id.* at *12. The Florida Supreme Court has thus confirmed that the *Engle* verdict does not establish what theories the *Engle* jury actually accepted. In *Bernice Brown*, the district court likewise held that "it is impossible to determine the precise issue decided by the Phase I jury[] with respect to individual claims," which led it to conclude that use of the *Engle* findings to establish elements of those claims violates due process. *Brown v. R.J. Reynolds Tobacco Co.*, 576 F. Supp. 2d 1328, 1346 (M.D. Fla. 2008), *vacated on other grounds*, 611 F.3d 1324 (11th Cir. 2010). And in *Waggoner*, the court noted that "the *Engle* class did not pursue a single theory of defect, but rather alleged a number of discrete design defects" covering some but not all brands and types of cigarettes. *Waggoner v. R.J. Reynolds Tobacco Co.*, 835 F. Supp. 2d 1244, 1263 (M.D. Fla. 2011).

## B.    Plaintiffs' Position Conflicts With The *Engle* Record

Plaintiffs' parsing of the *Engle* record (PB 2-10) affords no basis for disregarding these decisions. Plaintiffs' contention—that it is "extremely unlikely" the *Engle* jury "might have thought they were presented with alternative theories of

5

liability on each count" (PB 37)—simply ignores our record-based showing that the class *did*, in fact, raise a wide range of defect, negligence, and concealment allegations. *See Duke* Br. 4-6. Plaintiffs recap their evidence and argument that all cigarettes are defective because they are addictive and can cause disease. PB 4-5. However, the relevant question is not whether the *Engle* class pursued those allegations, but whether it also pursued *alternative* allegations *not* encompassing all brands and types of cigarettes. *See*, *e.g.*, *Fayerweather*, 195 U.S. at 307 (where "testimony [i]s offered at the prior trial upon several distinct issues, the decision of any one of which would justify the verdict or judgment, then the conclusion must be that the prior decision is not an adjudication upon any particular issue or issues; and the plea of *res judicata* must fail"); *Russell v. Place,* 94 U.S. 606, 608 (1877) (no preclusion where "several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered").

Plaintiffs repeat the mantra that Phase I involved "common" issues for purposes of class certification and the *Engle* trial plan. PB 3, 6, 12, 28. However, Florida law makes clear that a class action may address, as a "common" issue, questions that "affect all *or a substantial number* of the class members." *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 107 (Fla. 2011) (emphasis added). Although defendants did seek to limit Phase I to questions that were "common" in the

6

strict sense "that they should apply to all of the class members" (PB 3), the trial court rejected that request by allowing the class to present evidence and argument about brands and types of cigarettes smoked only by various subsets of the class, and about marketing that allegedly targeted various other subsets. For example, when defendants argued that youth-marketing evidence should be excluded from Phase I because it was not a common issue (Reply Addendum Tab 1 at 24415), the class successfully responded that "[i]t's a fallacy that every common issue has to apply to one hundred percent of the class members" (*id.* at 24417).[1]

Plaintiffs also assert that the Phase I closing arguments focused only on generic allegations about all cigarettes. PB 4-5. In fact, the class's closing argument was not remotely so limited. *See*, *e.g.*, Reply Addendum Tab 1 at 36351-52, 36401, 36432 (argument attacking low-tar cigarettes); *Duke* Br. Addendum Tab 10 at 36717 (same); *id.* at 36730-31 (ammoniated cigarettes); *id.* at 36731-32 (cigarette brands with "genetically altered Y-1 tobacco"); *id.* at 36664 (Marlboro and Kool brands with "higher smoke pH than . . . other competitive brands"); Reply Addendum Tab 1 at 36561-63 (Virginia Slims brand with higher nitrosamine levels); *id.*

---

[1]  Additional *Engle* record materials are included in Reynolds's Consolidated Reply Addendum filed with this brief. These materials were contained on a DVD filed with the district court in the *In Re: Engle Cases* masterfile, 3:09-cv-10000-TJC-JBT, Doc. 655, pursuant to court order, Doc. 638. They were also made part of the record in these cases. *Walker*, No. 3:09-cv-10598-RBD-JBT, Doc. 250; *Duke*, No. 3:09-cv-10104-RBD-JBT, Doc. 201.

at 36406, 37519 (marketing of Camel brand); *Duke* Br. Addendum Tab 10 at 36724 ("marketing efforts to underage smokers"); Reply Addendum Tab 1 at 36619 (marketing to "women, children, and minority populations"). Nor was the defendants' closing argument. *See*, *e.g.,* Reply Addendum Tab 1 at 37136, 37170-71, 37182-94 (defending against allegations regarding filtered, light, and low-tar cigarettes); *id.* at 37161 (light and ammoniated cigarettes); *id.* at 37210-12 (ammoniated cigarettes); *id.* at 37201-02 (cigarettes with "Y-1" tobacco); *id.* at 37070-71 (youth marketing).

Plaintiffs next claim support from the Phase I jury instructions. PB 6. However, those instructions reinforced what the verdict form makes clear: that the jury could find for the class if it determined that *any* cigarettes (not *all* cigarettes) were defective or negligently designed or marketed. For example, the instructions explained that the jury should consider all of the evidence, not simply evidence relevant to the class as a whole. *Duke* Br. Addendum Tab 10 at 37559-60. More specifically, the strict-liability instruction defined the issue as whether the defendants "designed, manufactured, and marketed cigarettes which were defective," not whether *all* of defendants' cigarettes were defective. *Id.* at 37562; *see* PB Addendum Tab 21 at 37570. The negligence instruction was similarly open-ended and identified *different* ways to establish negligence; it compelled a liability finding if a defendant had failed to use reasonable care in the "designing, manufacturing, test-

8

ing, *or* marketing" of cigarettes.  *Duke* Br. Addendum Tab 10 at 37577 (emphasis added).  The jury was not asked to decide whether all of the defendants' cigarettes were defective or negligently designed or marketed.

Plaintiffs cite the introductory instructions that Phase I would decide "common" liability issues for or against "the Florida class."  PB 6.  But it is what actually happened at trial, not a general preliminary statement, that controls.  Moreover, as explained above, "common" issues under Florida law include issues relevant to any significant subset of the class; nothing in the instructions suggested otherwise.  Further, in context, the introductory instructions merely explained that Phase I was limited to questions regarding the defendants' conduct.  This is clear from the passage immediately following the one block-quoted by Plaintiffs:  "This trial did not address issues as to the conduct or damages of individual members of the Florida class.  Those issues are not relevant during this trial."  *Duke* Br. Addendum Tab 10 at 37558.

Finally, Plaintiffs claim support from the *Engle* trial court's Omnibus Order denying the defendants' directed-verdict motions.  Plaintiffs characterize that order as resting on their generic allegations about all cigarettes.  PB 9-10.  However, the order found that sufficient evidence existed "to support the jury verdict that cigarettes manufactured and placed on the market by the defendants were defective *in many ways*."  *Engle v. R.J. Reynolds Tobacco Co.*, No. 94-08273 CA-22, 2000 WL

9

33534572, at *2 (Fla. Cir. Ct. Nov. 6, 2000) (emphasis added).  As shown in our

opening briefs, that conclusion, far from supporting Plaintiffs, is fatal to their posi-

tion.  *See Duke* Br. 48-49; *Ashe v. Swenson,* 397 U.S. 436, 444 (1970) (no preclu-

sion if a "'rational jury could have grounded its verdict upon an issue other than

that which [a party] seeks to foreclose from consideration'" (citation omitted)).

### C.    The "Thing Adjudicated" May Have Nothing To Do With Plaintiffs' Individual Claims

In a slight variation of this argument, Plaintiffs contend that the "thing adju-

dicated" in Phase I was the conduct elements of all progeny claims.  PB 34-38.

That is incorrect.  While the verdicts disclose that the jury decided at least some

conduct allegations against the *Engle* defendants, it is impossible to determine

which of the alternative allegations were decided, and thus to know whether the

conduct findings in *Engle* bear on the claims of any particular progeny plaintiff.

For example, a finding that *light* cigarettes were defective would have no possible

application to smokers who never smoked light cigarettes (like Albert Walker), and

a finding that *unfiltered* cigarettes were defective would have no possible applica-

tion to smokers who smoked only filtered cigarettes (like Sarah Duke).  Moreover,

Reynolds's tort liability turns not on whether it ever sold defective or negligently

designed or marketed cigarettes to anyone, but on whether it sold such cigarettes to

the individual smoker at issue in each case.  Because it is impossible to determine

whether the *Engle* findings encompass the brands or kinds of cigarettes smoked by

10

Mr. Walker and Mrs. Duke, it was impermissible to prevent Reynolds from con-

testing the defect and negligence elements in these cases.

## II.    THE FLORIDA SUPREME COURT CANNOT AVOID DUE PRO-CESS BY LABELING ITS ANALYSIS "CLAIM" PRECLUSION

The Florida Supreme Court adopted a different approach.  It conceded that

the actually-decided requirement for *issue* preclusion would "make the Phase I

findings . . . useless," because those findings could have rested on allegations irrel-

evant to any individual plaintiff.  2013 WL 978259, at *12.  The court asserted,

however, that there was no constitutional problem because it had chosen to de-

scribe the preclusion question as one of *claim* preclusion, which applies to matters

that *may not have been resolved* in a prior adjudication.  *Id.*  As explained below,

the court thus created a doctrine with *all* of the hallmarks of issue preclusion *ex-

cept* for the requirement of an actual decision on the issue in question, and with

virtually *none* of the hallmarks of claim preclusion.  Even Plaintiffs do not serious-

ly attempt to defend this transparent effort to avoid constitutional limits.

Due process cannot be so easily evaded.  As the Supreme Court repeatedly

has explained, "extreme applications of the doctrine of res judicata may be incon-

sistent with a federal right that is 'fundamental in character'" (*Richards v. Jeffer-

son Cnty., Ala.*, 517 U.S. 793, 797 (1996) (citation omitted)), and so are "subject to

due process limitations" (*Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)).  *Douglas*'s

use of the label "claim" preclusion to eliminate Reynolds's right to an actual deci-

11

sion is such an extreme application for at least four reasons: it elevates semantics over substance; it is inconsistent with centuries of settled law of claim preclusion; it is fundamentally unfair to Reynolds; and it applies only to class actions, and thus impermissibly uses class-action procedure to diminish various substantive rights.

In short, calling the analysis "claim" preclusion does not change the fundamental constitutional problem: the judgments in these cases would deprive Reynolds of its property without any assurance that each element of Plaintiffs' claims were decided against Reynolds. It is entirely unsupported by history, and cannot possibly be fair, to preclude Reynolds from litigating issues that the *Engle* jury may never have reached, or may even have decided *in Reynolds's favor*. Yet that is precisely what is occurring here.

### A. The Court's Application Of "Claim" Preclusion Seeks To Evade Constitutional Limits With Mere Labels

States may not evade constitutional limits simply by changing labels on their actions. "Determining constitutional claims on the basis of such formal distinctions, which can be manipulated largely at the will of the government agencies concerned, . . . is an enterprise that [the Supreme Court has] consistently eschewed." *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 679 (1996) (constitutional rights do not depend on whether a state labels an individual an employee or independent contractor). With regard to due process in particular, that Court has long "'look[ed] to substance, not to bare form, to determine whether constitutional minimums have

12

been honored.'" *Bell v. Burson*, 402 U.S. 535, 541 (1971) (citation omitted).  And because substance trumps form, it necessarily trumps labels.    *See Air-Way Elec. Appliance Corp. v. Day*, 266 U.S. 71, 82 (1924) (law at issue violated due process "'[w]hen tested, as it must be, by its substance—its essential and practical operation—rather than its form or local characterization'" (citation omitted)); *SEC v. Elliott*, 953 F.2d 1560, 1567 (11th Cir. 1992) ("[w]e must look at the actual substance, not the name or form, of the procedure").

*Douglas*'s analysis flouts this basic principle.  In substance, the question of the preclusive effect of the *Engle* findings is one of issue preclusion.  *Engle* itself made this clear, both in converting the case into an *issues* class (*see Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1268 (Fla. 1996)), and in stressing that Phase I did not adjudicate any *claims* (*see id.* at 1263).  The "claim" preclusion created in *Douglas* is issue preclusion in substance—except for the right to an actual decision, which would make the findings at issue "useless" (2013 WL 978259, at *12).  It applies the consequences of claim preclusion, but where none of the predicates of that doctrine have been satisfied.  And it operates to preclude litigation of critical *issues* that no prior jury may have resolved against the *Engle* defendants.

Plaintiffs take shifting positions on the rationale of *Douglas*.  At one point, they briefly attempt to counter our arguments by invoking its holding on "claim" preclusion.  PB 38-39.  The principal thrust of their brief, however, is to distance

13

themselves from *Douglas*'s reasoning. Plaintiffs thus contend that the difference between claim and issue preclusion is a "red herring" (PB 26); that the "the claim preclusion/issue preclusion labeling dispute [is] much ado about nothing" (PB 35); and that "any doctrinal differences between issue preclusion and claim preclusion" are merely "academic" (PB 39). Plaintiffs ultimately conclude—correctly, and in conflict with *Douglas*'s label-based analysis—that "due process inheres in function not form." *Id.*

*Douglas*'s "claim" preclusion seeks to avoid, merely by changing a label, the due-process requirement of an actual decision, as recognized in *Fayerweather* and evidenced in centuries of precedent. It is patently unconstitutional "'[w]hen tested, as it must be, by its substance" (*Air-Way*, 266 U.S. at 82).

## B.    The Court's Application Of "Claim" Preclusion Is Unprecedented

As our opening briefs showed, "traditional practice provides a touchstone for constitutional analysis" under the Due Process Clause. *Honda Motor Co. v. Oberg*, 512 U.S. 415, 430 (1994); *Duke* Br. 25-27. Like *Waggoner*'s use of issue preclusion without an actual decision, *Douglas*'s use of "claim" preclusion is also inconsistent with an unbroken, centuries-long chain of common-law precedent.

**1.**    As its name suggests, claim preclusion precludes the assertion of *claims* that have been litigated to final judgment. It applies against *both* parties to the prior litigation, and has never been applied to affect subsequent litigation that it

does not absolutely bar.  In the *Engle* progeny litigation, however, the claims at issue are being litigated, not precluded.  In at least two respects, *Douglas* thus made a "radical departure" from settled and longstanding rules governing claim preclusion.  2013 WL 978259, at *18 (Canady, J., dissenting).

*First*, prior to *Douglas*, no court had ever applied claim preclusion to *issues* within a partially-adjudicated claim that has itself yet to reach a final judgment.  In the federal courts, it has been settled, from time immemorial, that claim preclusion applies only when there has been "a full and complete judgment *on the whole cause of action*," not a judgment on mere *issues*.  *Schuler v. Israel*, 120 U.S. 506, 509 (1887) (emphasis added); *see Oklahoma City v. McMaster*, 196 U.S. 529, 533 (1905) ("A verdict, or finding of the court alone, is not sufficient.").[2]  State courts have always followed the same rule.  *See, e.g.*, *Wade v. Clower*, 94 Fla. 817, 829 (1927) (claim preclusion applies after "'[a] judgment . . . upon the same *cause of action*'" (citation omitted; emphasis added)); 1 Simon Greenleaf, *A Treatise on the*

---

[2]  *See, e.g., Baker v. GMC*, 522 U.S. 222, 233 n.5 (1998) ("a valid final adjudication *of a claim* precludes a second action on that claim" (emphasis added)); *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948) (claim preclusion applies "when a court of competent jurisdiction has entered a final judgment on the merits *of a cause of action*" (emphasis added)).

*Law of Evidence* § 522 at 672 (3d ed. 1846) ("the same *cause of action* ought not to be brought twice to a final determination" (emphasis added)).[3]

*Douglas* is incompatible with this settled rule. In Orwellian fashion, it held that *claim* preclusion applies to the resolution of common *issues*. *See* 2013 WL 978259, at *12-14. This is especially ironic, as *Engle* justified the class certification by reference to the rules permitting *issues* classes. *See* 945 So. 2d at 1268-70. But none of the issues addressed in Phase I of *Engle* resolved *claims*, as they "'did *not* determine whether [Reynolds was] liable to anyone.'" *Id.* at 1263 (citation omitted). Thus, the appellate courts to consider the issue before *Douglas* had held that *issue* preclusion governs. *See Bernice Brown*, 611 F.3d at 1333 ("[b]ecause factual issues and not causes of action were decided in Phase I, the Florida Supreme Court's direction that the approved findings were to have 'res judicata effect' . . . necessarily refer[red] to issue preclusion"); *R.J. Reynolds Tobacco Co. v.*

---

[3]  *See, e.g., Short v. Dep't of Emp't Servs.*, 723 A.2d 845, 849 (D.C. 1998) (claim preclusion prevents "a party from relitigating an entire claim that has already reached a final judgment"); *Riley v. Maloney*, 499 N.W.2d 18, 20 (Iowa 1993) (claim preclusion applies "following judgment on the same cause of action"); *Beegan v. Schmidt*, 451 A.2d 642, 644 (Me. 1982) (claim preclusion "prohibits relitigation of an entire 'cause of action' . . . once a valid final judgment has been rendered . . . on the same cause of action"); *Hauser v. Mealey*, 263 N.W.2d 803, 806 (Minn. 1978) (claim preclusion applies to second suit "predicated on the same cause of action which has been determined by a judgment"); *Busick v. Workmen's Comp. Appeals Bd.*, 500 P.2d 1386, 1390 (Cal. 1972) (claim preclusion prevents parties "from relitigating a cause of action that has been finally determined").

16

*Brown*, 70 So. 3d 707, 716 (Fla. 4th DCA 2011) ("we do not think the Florida Supreme Court intended for claim preclusion to be applied"); *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1067 (Fla. 1st DCA 2010) ("we generally agree with the Eleventh Circuit's analysis of issue preclusion versus claim preclusion").

*Second*, no court had ever allowed a *plaintiff* to use claim preclusion *offensively* to facilitate a second judgment on the same claim. Instead, claim preclusion is a *defense* to further litigation; where applicable, it "extinguishes [the claim] altogether." *Rivet v. Regions Bank*, 522 U.S. 470, 476 (1998); *see Bernice Brown*, 611 F.3d at 1332. Claim preclusion thus bars a plaintiff from bringing additional litigation on the same claim, regardless of whether the plaintiff in the original action was victorious (*see* Restatement (Second) of Judgments § 18 (1982) ("Second Restatement") (general rule of merger)), or unsuccessful (*see id.* § 19 (general rule of bar)). This rule is both longstanding[4] and enduring,[5] and Plaintiffs have not cited a

---

[4] *See, e.g.*, *Cromwell v. Cnty. of Sacramento*, 94 U.S. 351, 353 (1877) (a "claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon *any ground whatever* (emphasis added)); *Bank of N. Am. v. Wheeler*, 28 Conn. 433, 440 (1859) ("no principle of the common law is better established than that a domestic judgment merges and therefore extinguishes the cause of action"); Abraham Clark Freeman, *A Treatise on the Law of Judgments* § 215 at 181 (1873) (noting the "well established principle of law, that no further action can be prosecuted, between the same parties, upon a matter already ripened into judgment").

[5] *See, e.g.*, *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 509 (8th Cir. 2012) (claim preclusion under Minnesota law "applies as an absolute bar" to fur-

17

single case (other than *Douglas*) in which claim preclusion has been invoked to di-
rect the course of future litigation on the same claim. In short, the "offensive use
of res judicata to seek a new judgment on a claim already resolved is clearly inap-
propriate." *Baltimore Contractors, Inc. v. Gen. Concrete Constr. Corp.*, No. 80-
551, 1982 U.S. Dist. LEXIS 10273, at *4 (E.D. Pa. Feb. 10, 1982).

*Douglas* abrogated this limit as well. If settled rules of claim preclusion ap-
plied, the strict-liability and negligence "claims" supposedly adjudicated in Phase I
would have merged into the *Engle* judgment, which would prevent Plaintiffs from
bringing further litigation whatsoever on those claims. *See Bernice Brown*, 611
F.3d at 1332. But *Douglas*, ostensibly applying "claim" preclusion, allowed prog-
eny plaintiffs to use the *Engle* findings to facilitate a second action on the same
claims. 2013 WL 978259, at *8-9. That too is unprecedented.

   **2.**    *Douglas* sought to justify its unprecedented use of "claim" preclusion
on two grounds, neither of which withstands scrutiny.

   *First*, *Douglas* stated that "a defendant's common liability may be estab-
lished through a class action and given binding effect in subsequent individual

---

ther litigation on the same claim); *Arlin-Golf, LLC v. Vill. of Arlington Heights*,
631 F.3d 818, 821 (7th Cir. 2011) (same under Illinois law); *O'Connor v. Pierson*,
568 F.3d 64, 69 (2d Cir. 2009) (Connecticut law); *Brown v. One Beacon Ins. Co.*,
317 F. App'x 915, 917 (11th Cir. 2009) (Alabama law); *Gibson v. Ada Cnty.*, 266
F. App'x 686, 686 (9th Cir. 2008) (Idaho law).

damages actions." 2013 WL 978259, at *8; *id.* at *14. It is, of course, accepted class-action practice that common issues may sometimes be litigated separately from individual ones. But that proposition in no way supports *Douglas'*s holding that claim preclusion can apply to prevent consideration of issues that were *not* ascertainably resolved in the initial phase or case. As the dissent noted, the *Douglas* majority "cited no authority—either within or outside the class action context— holding that a judgment that adjudicates only a portion of a claim is entitled to claim-preclusive effect." *Id.* at *18 (Canady, J., dissenting). Indeed, of the six cases cited on this point by *Douglas*, *see id.* at *8, *14, only one is even arguably relevant to the question presented, and it strongly supports Reynolds.

In *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999), employees argued that their employer had been negligent *in several different ways* in maintaining the ventilation system on its casino. *Id.* at 623, 627-28. In upholding class certification, the court did not suggest that the initial jury could simply determine whether the defendant had been negligent, with "claim" preclusion then attaching to create negligence on *every alternative* theory. Rather, it specifically held that, given the different potential bases for a negligence finding, the trial court would have to "instruct[] the jury to answer special verdicts finding whether the [defendant] was negligent . . . as to *each alleged causal agent*, i.e., tobacco smoke, dust mites, fungi, paint fumes, et cetera." *Id.* at 628 (emphasis added). Based on

these specific findings, "[t]he court can then properly limit the injuries for which the phase-two juries could find [the defendant] liable." *Id.* *Mullen* thus confirms—in the specific context of an issues class—that preclusion extends only to issues *actually decided* by the first jury, not to issues that *might have been*.[6]

Reynolds has been unable to find any case suggesting that claim preclusion applies to common issues resolved in the initial phase of an issues class. Instead, cases confirm, not surprisingly, that *issue* preclusion applies to *issues* classes, thereby preserving the defendant's right to have all elements of a claim decided by one jury or another. *See, e.g., Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 472 (7th Cir. 2004) (Easterbrook, J.) ("once *one* jury (in individual or class litigation) has resolved a factual dispute, principles of issue preclusion can bind the defendant to that outcome in future litigation"); *In re Rhone-Poulenc Rorer Inc.*, 51

---

[6] The remaining cases provide no support for *Douglas*. Four of them contemplate application of issue preclusion where, unlike here, the precise basis for the prior findings was clear. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 659 (7th Cir. 2004) (finding that defendants led plaintiffs "to believe that the tax preparer is their fiduciary"); *Daenzer v. Wayland Ford, Inc.*, 193 F. Supp. 2d 1030, 1034-35 (W.D. Mich. 2002) (finding that defendants failed to disclose specific information required by Truth in Lending Act); *In re Copley Pharm., Inc.*, 158 F.R.D. 485, 486 (D. Wyo. 1994) (finding that defendant sold specific contaminated drug); *Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558, 561 (S.D. Fla. 1973) (finding that defendant served contaminated food and water on specific cruise). A fifth decision simply upheld an entirely conventional application of preclusion to *bar* subsequent litigation on a claim that even the plaintiff conceded was finally resolved against her in prior litigation. *McCormack v. Abbott Labs.*, 617 F. Supp. 1521, 1524 (D. Mass. 1985).

F.3d 1293, 1297 (7th Cir. 1995) (Posner, J.) (in issues class, class members may file follow-on suits and "use the special verdict, in conjunction with the doctrine of collateral estoppel, to block relitigation of the issue" decided in the first case); *ACandS, Inc. v. Godwin*, 340 Md. 334, 397 (1995) (issue preclusion applies to findings from first phase of asbestos litigation).   That is unsurprising because the same "[b]asic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply" to class actions as to other litigation. *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984).

*Second*, *Douglas* reasoned that courts apply claim preclusion, rather than issue preclusion, when the second suit arises from the same claim.  2013 WL 978259, at *12.  But, as the dissent noted, no court has ever applied claim preclusion to a partially-adjudicated claim—even when the second suit involves the same claim. *Id.* at *17 (Canady, J., dissenting).

Issue preclusion, in the form of "direct estoppel," has always applied in these circumstances.  *DuChateau v. Camp, Dresser & McKee, Inc.*, __ F.3d __, 2013 U.S. App. LEXIS 7195, at *8 (11th Cir. Apr. 9, 2013); *see* 18 Charles A. Wright *et al.*, *Fed. Practice & Procedure* § 4418, at 471 (2d ed. 2002) ("Direct estoppel also may arise from action that is designed to conclude part of a single claim on the merits, but to leave the way open for further action on the balance of the claim"); Restatement (First) of Judgments § 45 cmt. d (1942) ("Where an issue is actually

litigated and determined in an action, the determination is conclusive in any subsequent action between the parties based upon the same cause of action."); *Kroier v. Kroier*, 95 Fla. 865, 875 (1928) (claim preclusion does "not prevent the maintenance of a new suit on the same cause of action" if the prior suit did not finally resolve a claim on its merits, and any "estoppel extends only to the exact point raised by the pleadings, and decided").

In sum, *Douglas*'s "claim" preclusion departs from an unbroken line of common-law authorities that have limited such preclusion to the resolution of claims and used it only as an absolute bar on further litigation.  Neither *Douglas* nor Plaintiffs have cited any authority justifying the use of "claim" preclusion to deprive Reynolds of its constitutional right to an actual decision of all issues and elements on which the claim depends.

### C.    The Court's Application Of "Claim" Preclusion Is Fundamentally Unfair

**1.**    In substance, *Douglas*'s purported application of "claim" preclusion functions exactly like issue preclusion—but without any requirement of an actual decision on the relevant issue.  It is therefore fundamentally unfair, and flunks the due-process balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), for the reasons identified in Reynolds's opening briefs.  *See Duke* Br. 31-35.

*First*, like all defendants resisting the offensive use of preclusion by plaintiffs, Reynolds has important property interests at stake.  Plaintiffs and their *amici*

seek to discount those interests because the judgments in these two cases are modest and because defendants have prevailed in almost one-third of the progeny cases so far tried to verdict.  PB 2, 55; *Amici* Br. 6-16.   But due process does not vary according to winning percentages or the size of individual judgments.  Moreover, whether the relevant doctrine is labeled as one of issue or "claim" preclusion, the *Engle* defendants face the imposition of massive liability without any assurance that some jury has decided each element of any particular claim.  According to *amici*'s own figures, with only 89 progeny cases litigated to verdict, and with thousands more still pending, judgments totaling over $469 million have already been entered against the *Engle* defendants.  *See Amici* Br. Ex. 3.  By any conceivable measure, *Engle* progeny litigation implicates significant property interests.

*Second*, the risk of an erroneous deprivation is substantial because it is impossible to determine which of the many varied allegations in *Engle* were resolved in favor the class, which were resolved in favor of the defendants, and which simply were not reached.  Thus, liability in these cases was imposed without any assurance that some jury, either in *Engle* Phase I or in the progeny case, actually found each element of a claim in favor of the Plaintiff.  The Florida Supreme Court's use of the "claim" preclusion label in no way changes this basic source of unfairness.

*Third*, any competing interests in economy are insubstantial and in any event outweighed by the risk of an erroneous property deprivation.  Plaintiffs hyperboli-

cally suggest that, unless the Phase I findings are used to establish the conduct elements of their claims, "every one of thousands of *Engle* progeny would be required to repeat the Phase I trial."  PB 54.  In fact, the preclusion dispute does not affect the scope of progeny trials at all, because progeny plaintiffs *do* introduce (over defendants' unavailing objections) extensive evidence regarding the defendants' conduct, ostensibly to litigate issues of comparative fault and punitive damages.  In these cases, for example, Plaintiffs boast that they "introduced evidence that all cigarettes containing nicotine are categorically defective."  PB 16.  The due-process question is whether the progeny jury must decide whether that allegation is true or whether it must accept the allegation as true, not because it can be shown that the *Engle* jury actually decided the question, but only because that jury might have decided it.  The latter approach is as unfair as it is unprecedented.

**2.**    The Florida Supreme Court's decision cannot be justified under the traditional fairness rationale for claim preclusion.

**a.**    At its core, the Due Process Clause guarantees a party not just "the opportunity to present his case," but also the right to "*have its merits fairly judged*." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (emphasis added).  For defendants, this includes the right to contest all elements of a claim; to present "'every available defense'" (*Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (citation omitted)); and to obtain a decision on every claim or defense.

Thus, "[i]t is a proposition which hardly seems to need explication that a hearing which excludes consideration of an *element essential*" of a claim cannot comport with due process. *Bell*, 402 U.S. at 542 (emphasis added).

In some contexts, however, this right to an actual decision is subject to waiver. Thus, states may adopt "reasonable procedural requirements for triggering the right to an adjudication" (*Logan*, 455 U.S. at 437), and courts may grant default judgments against parties who refuse to abide by such requirements (*see Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909)). Claim preclusion falls within this mold, by "requir[ing] a plaintiff to try his whole cause of action and his whole case at one time" rather than in piecemeal fashion. *United States v. Cal. & Or. Land Co.*, 192 U.S. 355, 358 (1904). Thus, a plaintiff who raises a strict-liability claim in one case cannot, in a subsequent case, raise a negligence claim arising out of the same facts. *See*, *e.g.*, Second Restatement § 17 (general rule of claim preclusion); *id.* § 24 (scope of "claim"). In Florida as elsewhere, claim preclusion forecloses litigation of claims or defenses that *could have been* decided (in addition to those that *actually were* decided), not because a jury is deemed to have decided claims or issues it might not have, but because a party simply failed to raise the relevant claims or defenses at the appropriate time. *See*, *e.g.*, *Boynton Landscape v. Dickinson*, 752 So. 2d 1236, 1237 (Fla. 1st DCA 2000) ("If a merits hearing occurs and mature claims are not litigated, the claims are considered waived, and later lit-

igation is precluded by application of the doctrine of res judicata."); *McLymont v. A Temporary Solution*, 738 So. 2d 447, 448 (Fla. 1st DCA 1999) (similar).

Traditional claim preclusion raises no concerns of fundamental fairness. Most importantly, as for the private interests at stake, it does not eliminate a party's right to an adjudication on each element of a claim, but merely requires that related claims be raised together if possible. Thus, no court has ever applied claim preclusion to bar litigation of a claim or defense that could *not* have been decided in the prior action. As this Court indicated, "[t]he most basic principles of res judicata require that full relief must have been available in the first action in order for the second action to be barred." *Eastman Kodak Co. v. Atl. Retail, Inc.*, 456 F.3d 1277, 1287 (11th Cir. 2006); *see* 18 Wright, *Fed. Practice* § 4412, at 276-77; 1 Greenleaf, *Treatise on Evidence* § 524 at 673 (claim preclusion does not apply where a party "could not avail himself of the same means of defence, or of redress, which are open to him in the second suit"). On the other side of the balance, claim preclusion serves important interests in repose. It was "'conceived in the light of the maxim that the interest of the state requires that there be *an end* to litigation'" (*Federated Dep't Stores v. Moitie*, 452 U.S. 394, 401-02 (1981) (citation omitted; emphasis added)), and thus absolutely bars claims that "could have been litigated" in order to promote judicial economy and give finality "to parties who have already litigated a claim" (*Eastman Kodak*, 456 F.3d at 1284).

**b.**    *Douglas* cannot be justified under these rationales.  Most importantly, *Douglas*'s "claim" preclusion eliminates Reynolds's right to an actual decision on critical issues absent *any* opportunity for Reynolds to obtain such a decision.  These are not cases in which Reynolds, in a prior action, failed to raise an available claim or defense.  To the contrary, the *Engle* class raised various claims against Reynolds, and various alternative allegations in support of each claim, and Reynolds vigorously defended against all of those claims and allegations.  Plaintiffs say that the *Engle* defendants contested only generic allegations against all cigarettes (PB 3-5), but that is untrue.  In their evidentiary presentations and closing argument, Defendants vigorously contested the class's type-specific, brand-specific, time-specific, and consumer-specific allegations.  *See*, *e.g.*, Reply Addendum Tab 1 at 13624-26, 25661-63, 27660-63, 37170-71 (contesting allegations about filtered cigarettes); *id.* at 27630-31, 27639, 37136, 37170-71, 37182-94 (low-tar and light cigarettes); *id.* at 12200-01, 27753-54, 27762-63, 37210-12 (ammoniated cigarettes); *id.* at 16136-37, 36869-70, 37195-97 (nicotine manipulation); *id.* at 32845-46, 32856-59, 37201-02 (brands with Y-1 tobacco); *id.* at 34119-20, 34134-47, 37070-71 (youth marketing).  At the end of Phase I, the jury ruled in favor of the class, but did not indicate which of the alternative allegations it accepted, which it rejected, and which it did not reach.  Preclusion would be fundamentally unfair under these circumstances, both because the court in the second action could

27

"only speculate" as to what allegations "underlay the verdict" (*Chew v. Gates*, 27 F.3d 1432, 1438 (9th Cir. 1994)), and because, if a "general verdict is opaque, there should be no reliance or sense or repose growing out of the disposition of individual issues" (18 Wright, *Fed. Practice* § 4420, at 536).

Moreover, interests in repose cannot justify the "claim" preclusion applied in *Douglas*. Far from putting an end to further litigation, *Douglas* affirmatively facilitates it. And it does so not by limiting the range of evidence presented in progeny actions, but by incentivizing those actions with a rule deeming the prior jury to have resolved against the defendants all of the allegations that it possibly *could* have. Regardless of the labels applied, neither history nor fairness supports that remarkable result.

### D.    The Court's Application of "Claim" Preclusion Diminishes Reynolds's Substantive Rights

Perhaps recognizing the novelty of its "claim" preclusion holding, *Douglas* limited it to class actions. The court acknowledged that, outside the class-action context, "a monetary award is required for a final judgment" that could support application of claim preclusion. 2013 WL 978259, at *13. Nonetheless, the court reasoned that "in the context of a class action, common issues (including elements of claims) are often tried to final judgment separately from individual issues." *Id.* Given that difference, it embraced for issues classes the broader, could-have-been-

28

decided standard of claim preclusion.  *See id.* at \*12-14.  In doing so, the court un-
constitutionally used class certification to diminish Reynolds's substantive rights.

Due process prohibits use of class actions to alter the substantive rights and
defenses that a party would otherwise enjoy.  This Court has held explicitly that
"due process . . . prevents the use of class actions from abridging the substantive
rights of any party."  *Sacred Heart Health Sys. v. Humana Military Healthcare
Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010).  Other courts agree.  *See*, *e.g.*,
*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231-33 (2d Cir. 2008); *In re Fi-
breboard Corp.*, 893 F.2d 706, 711-12 (5th Cir. 1990); *see also Philip Morris USA
Inc. v. Scott*, 131 S. Ct. 1, 3 (2010) (Scalia, J., granting stay) (recognizing "consti-
tutional constraints" on courts' ability to eliminate substantive elements of claims
through class certification).

In *Sacred Heart*, this Court reversed the certification of a class action in
which hospitals had sued an HMO for alleged breaches of reimbursement contracts.
Different groups of plaintiffs had different contracts "that variously bolster[ed] or
detract[ed] from [the defendant's] non-frivolous argument that [its] rates [were]
contractually valid."  601 F.3d at 1175.  The Court concluded that a class action
with a single breach-of-contract finding would allow the plaintiffs "'to stitch to-
gether the strongest contract case based on language from various [contracts], with
no necessary connection to their own contract rights.'"  *Id.* at 1176 (citation omit-

ted).  But plaintiffs, the Court held, "may not lawfully 'amalgamate' their disparate claims in the name of convenience," because to do so would create a grave risk of abridging the defendant's "substantive rights" to raise individual defenses as to each contract claim.  The Court therefore reversed the class certification as inconsistent with the rule that "due process" (and also, in federal court, the Rules Enabling Act) "prevents the use of class actions from abridging the substantive rights of any party." *Id.*

In creating a novel preclusion doctrine only for class actions, *Douglas* flouted this constitutional principle.  The Florida Supreme Court held that, for issues classes, the adjudication of common issues gives rise to "claim" preclusion.  2013 WL 978259, at *12-13.  But it expressly contrasted that procedure (and the broad preclusive effects flowing from it) with the bifurcation of issues in individual suits (which, it acknowledged, would *not* trigger claim preclusion).  *See id.* at *13.  In other words, had these Plaintiffs individually litigated Phase I, they could *not* now seek to preclude litigation of the conduct elements of their claims before a different jury.  As *Douglas* acknowledged, in that circumstance, the requirement of an actual decision would be dispositive, and the Phase I findings would therefore be useless.

*Douglas*'s use of special preclusion rules for class actions violates Reynolds's substantive rights in several respects.  To begin with, Reynolds has a substantive right to the same preclusion rules that would have applied in individual ac-

tions. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503-04 (2001) (state preclusion rules are "substantive" for purposes of Rules Enabling Act); 7AA Charles A. Wright *et al.*, *Fed. Practice & Procedure* § 1789, at 557 (3d ed. 2005) (because the "preclusive effect to be given a judgment typically is viewed as a 'substantive' matter," Rule 23 does not adopt preclusion rules); *cf. In re Bridgestone/Firestone, Inc., Tire Prods. Liab. Litig.*, 288 F.3d 1012, 1018, 1020 (7th Cir. 2002) (refusing to alter choice-of-law rules for class actions because, "[t]empting as it is to alter doctrine in order to facilitate class treatment, judges must resist so that all parties' legal rights may be respected").

By adopting special preclusion rules for issues classes, *Douglas* also diminished Reynolds's rights under Florida tort law. Under that law, the plaintiff must prove that the product *used by the plaintiff* (or, in wrongful-death cases, by the plaintiff's decedent) was either defective or negligently designed or marketed. *See, e.g.*, *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976) (strict liability); *Meyers v. City of Jacksonville*, 754 So. 2d 198, 202 (Fla. 1st DCA 2000) (negligence). *Douglas*, however, permits recovery based on a mere showing that the defendant sold defective cigarettes or was negligent in some unspecified respect toward some class members, even if not the plaintiff before the court. *See Duke* Br. Addendum Tab 2 at 2-3, 10-11. For class actions only, *Douglas* thus waters down the tortious-conduct elements of the relevant claims.

*Douglas* similarly waters down applicable causation standards.  To establish tort liability, Florida law requires a causal connection between the plaintiff's injury and either a product defect or the defendant's negligence.  *See, e.g.*, *West*, 336 So. 2d at 86-87; *Meyers*, 754 So. 2d at 202.  But because the defect and negligence theories underlying the Phase I findings are unknowable, *Engle* progeny juries cannot make those causation determinations.  As a result, *Douglas* changed the causation standard to require a connection not between *tortious conduct* and an injury, but only between a smoking *addiction* and an injury.  2013 WL 978259, at *7.

The Florida Supreme Court's use of the *Engle* class action, to alter these aspects of substantive law, violates due process.  *See Sacred Heart*, 601 F.3d at 1176.

## III.   THE REMAINING ARGUMENTS ASSERTED BY PLAINTIFFS AND BY THE FLORIDA SUPREME COURT LACK MERIT

Apart from Plaintiffs' core argument that issue preclusion's actually-decided requirement is satisfied here, and *Douglas*'s core argument that the requirement may be eliminated by re-labeling issue preclusion as "claim" preclusion, Plaintiffs and *Douglas* offer several additional arguments.  Most of these were addressed in our opening briefs, and none has merit.

### A.   "Opportunity To Be Heard" In *Engle*

*Douglas* and Plaintiffs assert that preclusion is permissible here because Reynolds was "afforded notice and opportunity to be heard," in *Engle* itself, "as to whether [its] actions should subject [it] to liability to all class members."  2013 WL

32

978259, at *10; PB 41-42.  This argument is a red herring.  Reynolds's due-process rights must be evaluated not against the process in *Engle* itself, but against the process in these cases; after all, it is the progeny judgments that will, if upheld, deprive Reynolds of its property.  In these cases, the denial of any opportunity to litigate the conduct elements of individual claims is palpably unconstitutional unless the application of preclusion satisfies due process.  And that inquiry does not turn on the quality of the process received in *Engle*, but on what the *Engle* jury actually decided.  As shown in our opening briefs (*Duke* Br. 27-31), if it is unclear what the first jury actually decided, preclusion has always been denied regardless of whether the parties had an opportunity to present evidence and argument, in the original case, on the issue for which preclusion is sought.

Moreover, even focusing on *Engle* itself, an "opportunity to be heard" satisfies due process only if it includes the ability to have the "merits fairly judged." *Logan*, 455 U.S. at 433; *see Duke* Br. 43.  Neither Plaintiffs nor *Douglas* cites any case for the startling proposition that an opportunity to be heard on an issue means only an opportunity to present evidence without any decision on the issue.

Plaintiffs add that the requisite "opportunity to be heard" demands that an individual be a party to the prior litigation or have "adequate representation" in it. PB 46-47 & n.12.  But although adequate representation of absent parties is obviously one requirement of due process, no case suggests that it is the *only* one.

33

**B.    Opportunity To Litigate Non-Precluded Elements**

*Douglas* and Plaintiffs assert that preclusion is permissible because progeny plaintiffs must prove *other* elements of their claims besides the ones subject to preclusion, and thus "do not simply walk into court, state that they are entitled to the benefit of the Phase I findings, prove their damages, and walk away with a judgment." 2013 WL 978259, at *11; PB 44-45.  As we explained (*Duke* Br. 42-43), the fact that progeny plaintiffs must prove *some* elements of their claims hardly makes it permissible to relieve them from proving *others*.  Plaintiffs' reasoning implies that courts may arbitrarily deem various elements of a claim to be established, so long as at least one element remains open.  But due process entails "'an opportunity to present every available defense,'" not simply a few.  *Williams*, 549 U.S. at 353 (citation omitted).

**C.    *Fayerweather* and Tradition**

*Douglas* and Plaintiffs seek to distinguish *Fayerweather* on the same grounds as *Waggoner* did.  2013 WL 978259, at *14; PB 50-51.  As we showed (*Duke* Br. 39-41), the assertion that *Fayerweather* merely addressed federal common law overlooks the fact that the Supreme Court's jurisdiction turned on whether the preclusion issue presented a constitutional question, and the Court concluded that it did.  *See* 195 U.S. at 297.  Moreover, in answering that question, the Court made clear that where "testimony was offered at the prior trial upon several distinct

34

issues, the decision of any one of which would justify the verdict or judgment, then the conclusion must be that the prior decision is not an adjudication upon any particular issue or issues, and the plea of *res judicata* must fail." *Id.* at 307; *see also id.* at 298-99 (court cannot give "unwarranted effect to a decision" by accepting as a "conclusive determination" a verdict "made without any finding of the fundamental fact").

Plaintiffs acknowledge "a 'legion' of decisions of similar vintage" as *Fayerweather*, but dismiss them as irrelevant because they were decided under the common law. PB 52 n.14. But the "abrogation of a well-established common-law protection against arbitrary deprivations of property raises a presumption" of a due-process violation. *Oberg*, 512 U.S. at 430. To show that the requirement of an actual decision qualifies as one such "traditional common-law protection," our opening briefs cited some 55 cases applying it, including cases from 1776 to 2010 and including 15 cases decided after 1990. *Duke* Br. 27-31. Plaintiffs neither quibble with our characterization of these cases nor cite *a single one* to the contrary. Despite Plaintiffs' footnoted, one-sentence dismissal of centuries of history, a widespread common-law rule—older than the Nation and still universally followed today—is powerful evidence of a due-process requirement.

Finally, while Plaintiffs state that *Fayerweather* "has been eclipsed" by modern precedents (PB 52), no Supreme Court decision has overruled it. That

alone makes Plaintiffs' statement immaterial.  *See*, *e.g.*, *Agostini v. Felton*, 521 U.S. 203, 237-38 (1997).  Moreover, the reason that *Fayerweather*'s constitutional requirement of an actual decision has not provoked another constitutional ruling is simply that—as the "legion" of cases shows—courts have universally continued to apply that requirement, except in the context of *Engle* progeny litigation.

### D.    "Collateral Attack"

Plaintiffs argue that Reynolds faces special burdens because it raises a "collateral due process attack on the *Engle* III final judgment."  PB 37-38.  Reynolds does not attack the *Engle* judgment; it challenges the preclusive effect given to it *in these cases*.  After all, it was not until these cases that preclusion was applied and led to monetary judgments against Reynolds.  Moreover, in successfully opposing certiorari in *Engle*, the class argued that, until the Phase I findings were applied in individual cases, the due-process issue would be "premature and not ripe for review."  Br. in Opp'n at 1, *R.J. Reynolds Tobacco Co. v. Engle*, No. 06-1545 (U.S. Aug. 15, 2007), 2007 WL 2363238.  Having successfully argued that the due-process issue was raised too early in *Engle*, class members cannot seriously contend that it is now raised too late.

### E.    Waiver

Plaintiffs and their *amici* argue that Reynolds waived its federal due-process challenge on state-law grounds, because it "had every opportunity to propose a

36

workable verdict form that could have provided the specificity it desired, but chose not to do so." PB 42-44; *Amici* Br. 16-22. This identical argument was presented in *Douglas*, *see* Answer Br. at 29-30, *Philip Morris USA Inc. v. Douglas*, No. SC12-617 (Fla. June 2012), 2012 WL 3078031, which proceeded to resolve the due-process question on the merits. This Court should not foreclose a federal constitutional challenge based on a state-law waiver argument that the Florida Supreme Court itself did not accept. *Cf.* Eugene Gressman *et al.*, Supreme Court Practice 187 (9th ed. 2007) ("if the state court does address and resolve a federal question, it is immaterial whether the question was properly raised in the state court proceedings").

Plaintiffs' waiver argument is also legally wrong, and its acceptance would eliminate even uncontroversial applications of the actually-decided requirement. By definition, whenever a prior verdict could have rested on alternative grounds, the party opposing preclusion has failed to obtain a verdict sufficiently specific to reveal the ground for the first jury's decision. Yet in those circumstances, Florida courts, like others throughout the Nation, routinely apply the actually-decided requirement to reject preclusion, not the Plaintiffs' proposed waiver theory to enforce it. *See*, *e.g.*, *Acadia Partners, L.P. v. Tompkins*, 673 So. 2d 487, 488-89 (Fla. 5th DCA 1996); *Allstate Ins. Co. v. A.D.H., Inc.*, 397 So. 2d 928, 929-30 (Fla. 3d DCA 1981); *Seaboard Coast Line R.R. Co. v. Indus. Contracting Co.*, 260 So. 2d

860, 862, 864-65 (Fla. 4th DCA 1972).  Moreover, these decisions make clear that the party seeking issue preclusion bears the burden of showing that the prior jury actually resolved the specific issue in question.  *See*, *e.g.*, *Bernice Brown*, 611 F.3d at 1334-35 (summarizing Florida law); *Seaboard*, 260 So. 2d at 864.  Plaintiffs are unable to cite even a single case in which a party was subjected to preclusion on the basis of an ambiguous verdict because it failed in the prior trial to prevent the ambiguity. [7]  To the contrary, parties may intentionally seek a general verdict "precisely because it reduces the risks of issue preclusion."  18 Wright, *Fed. Practice* § 4420, at 536.

Finally, Plaintiffs' waiver argument is wrong on the facts.  Despite their suggestion to the contrary (PB 6-8, 42-44), the *Engle* defendants *did* request a verdict form that would have required the jury to specify which specific allegations it accepted.  *See, e.g.*, *Duke* Br. Addendum Tab 10 at 35915-17; Reply Addendum Tab 1 at 35896-900, 35952-54; *id.* Tab 2 at 9-10, 17-18.  The class opposed that request on the ground that "[i]f we're going to start breaking down each of the counts, we're going to have a very, very lengthy verdict form."  *Duke* Br. Adden-

---

[7]  Plaintiffs' waiver decisions do not address preclusion at all, much less the preclusion consequences of a general verdict.  They involve entirely separate questions regarding the preservation of error in a single case.  *See Fla. E. Coast Ry. Co. v. Gonsiorowski*, 418 So. 2d 382, 384 (Fla. 4th DCA 1982); *Whitman v. Castlewood Int'l Corp.*, 383 So. 2d 618, 619 (Fla. 1980).

dum Tab 10 at 35893. And the *Engle* trial judge rejected it on the ground that, if the jury were required to specify which allegations it actually accepted, "I can anticipate we all getting beards by the time they come out [with a] decision." Reply Addendum Tab 3 at 44; *see also id.* Tab 4 at 48 (trial court rejecting "rotten suggestion" that verdict form ask more specific questions). That ruling underscores the diversity of allegations in Phase I, and the absurdity of assuming that all of them were *actually decided* against Reynolds merely because they *could have been.* And it confirms that Reynolds had no opportunity, even in *Engle* itself, to secure an actual decision on each of the various allegations.

### F.    Phase II-A

Plaintiffs contend that if there was no due-process violation in Phase II-A of *Engle*, then there is no due-process violation here. PB 45. But as Reynolds showed (*Duke* Br. 43-44), Phase II-A did not raise the due-process problem of these cases because it was adjudicated by the same jury that decided Phase I. That jury knew the specific grounds for its Phase I findings, and it was instructed to "determine whether defendants' conduct *upon which [it] based [its] Phase I verdict* was the legal cause of injury" to the class representatives. *Duke* Br. Addendum Tab 10 at 50236 (emphasis added). Thus, for the class representatives' individual claims, preclusion was limited to the issues actually decided, and did not extend to all issues that could have been decided. It is not just unconstitutional, but also bi-

39

zarre, that progeny plaintiffs now claim entitlement to much broader preclusion than was available to the *Engle* class representatives themselves.

*  *  *  *

Labels aside, the nub of these appeals is this:  The district court in these cases permitted the imposition of liability without any assurance that some jury, either in these cases or in *Engle* itself, decided in Plaintiffs' favor each element of Plaintiffs' claims.  That is a due-process violation of the first order.

## CONCLUSION

The judgments in these cases should be reversed.  *Walker* should be remanded for a new trial on the strict-liability and negligence claims, and *Duke* should be remanded for a new trial on the strict-liability claim.  In those trials, Plaintiffs should be required to prove all legal elements of their claims.

40

Date:  May 20, 2013                    Respectfully submitted,


                                       /s/ Stephanie E. Parker
Paul D. Clement                        Stephanie E. Parker
BANCROFT PLLC                              *Counsel of Record*
1919 M Street, N.W.                    Jason T. Burnette
Suite 470                              JONES DAY
Washington, DC 20036                   1420 Peachtree Street, N.E.
(202) 234-0090                         Suite 800
pclement@bancroftpllc.com              Atlanta, GA  30309
                                       (404) 581-8552
                                       separker@jonesday.com
                                       jtburnette@jonesday.com

                                       Gregory G. Katsas
                                       Charles R.A. Morse
                                       JONES DAY
                                       51 Louisiana Avenue, N.W.
                                       Washington, DC  20001
                                       (202) 879-3939
                                       ggkatsas@jonesday.com
                                       cramorse@jonesday.com

                                       *Attorneys for Defendant-Appellant*
                                       *R.J. Reynolds Tobacco Co.*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the 10,000 word limit provided by this Court's previous order of February 15, 2013, that consolidated and stayed these cases.  This brief  contain 9,953 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4.

2.     This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman.

/s/ Stephanie E. Parker
*Attorney for Appellant*
*R.J. Reynolds Tobacco Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 20, 2013, I electronically filed the foregoing

CONSOLIDATED REPLY BRIEF OF APPELLANT R.J. REYNOLDS TOBAC-

CO COMPANY using the Court's Appellate PACER system, which will automati-

cally send notification to the following counsel of record:

John S. Mills
Courtney Brewer
THE MILLS FIRM, P.A.
203 North Gadsden Street, Suite 1A
Tallahassee, Florida 32301

Norwood Sherman Wilner
Richard J. Lantinberg
THE WILNER FIRM
2nd Floor
444 E Duval St
Jacksonville, FL 32202

Elizabeth J. Cabraser
Richard M. Heimann
Robert J. Nelson
Sarah Robin London
Scott P. Nealey
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111

/s/ Stephanie E. Parker
*Attorney for Appellant*
*R.J. Reynolds Tobacco Co.*